[Civ. Nos. 23550, 23553. Third Dist. Jan. 2, 1985.]

RAINER MORTGAGE, Plaintiff and Respondent, v.
SILVERWOOD, LTD. et al., Defendants and Appellants.

COUNSEL

Robert A. Rehberg for Defendants and Appellants.

John W. Reese, Jr., for Plaintiff and Respondent.

OPINION

CARR, J.—Defendants appeal from judgments declaring deficiencies in favor of plaintiff Rainer Mortgage (Rainer) of $161,049 and $91,276, following judicial foreclosure sales of real property. In this consolidated appeal, defendants contend the trial court used an erroneous standard in determining

the amount of the deficiency judgments, and further that the determination ultimately made was not supported by the evidence. We agree the trial court employed an incorrect measure of the deficiency judgments and shall reverse.

## FACTS

The partnership defendants are two limited partnerships, Golden Oaks, Ltd. and Silverwood, Ltd. The general partner in each was North Valley Developers, Inc., a California corporation, of which the shareholders were defendants William Huggitt and Geri Huggitt. Each limited partnership borrowed monies from Rainer to finance two real estate developments. Golden Oaks was a planned development containing nine condominium units. Defendants executed two promissory notes for $110,000 and $373,680 secured by deeds of trust on the Golden Oaks property. Silverwood was a subdivision containing 10 lots. Defendants gave two promissory notes in the amounts of $147,000 and $255,600 to develop this project, the notes being similarly secured by deeds of trust. For each of the loans Mr. and Mrs. Huggitt executed personal guarantees of the obligations owed by the limited partnership.

Defendants defaulted on all the notes. The parties stipulated to judgments for $442,798.33 on the Golden Oaks notes and $294,726.86 as to Silverwood. The judgments ordered sale of the properties with the trial court retaining jurisdiction to enter deficiency judgments upon application by Rainer. The sale of each development was done by individual unit or lot. Rainer purchased five units of Golden Oaks by credit bidding and the remaining four units were sold to a third party. The total from the foreclosure sale of Golden Oaks was $290,445.60. As to Silverwood, one lot had been sold by defendants prior to the foreclosure. Of the remaining nine lots, four were improved with houses and five were unimproved. Rainer purchased four of the lots (two with houses) and two separate parties purchased the remainder. $211,700 was realized by the sale of Silverwood.

Rainer then made application for deficiency judgments pursuant to Code of Civil Procedure section 726.[1] This section authorizes a deficiency judg-

---

[1]Code of Civil Procedure section 726, subdivision (b) provides in relevant part: "In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for the debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which hearing either party may present evidence as to the fair value of the property or the interest therein sold as of the date of sale, the court shall render a money judgment against the defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the property or interest therein sold as of the date of sale. In no event shall the amount of the judgment, exclusive of interest from the date of sale and of costs exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by the mortgage or deed of trust."

ment in the amount by which the indebtedness exceeds the "fair value" of the property as of the date of the sale. Evidence was taken from several appraisers as to the market value of the properties in both a free market, fee simple absolute situation, and in a situation where all the circumstances attending a foreclosure sale were considered. As an example, in one appraisal the market value of each unit of Golden Oaks was $48,500 for the fee simple absolute, but $34,500 if considered in the foreclosure situation.

The trial court found the "fair value" of the properties was the appraisal tendered by Rainer, which took into account the price-reducing circumstances of the foreclosure. These values approximated the amounts received at the foreclosure sales.[2] Deficiency judgments based on these figures were entered and this appeal followed.

## DISCUSSION

An issue of first impression presented by this appeal is the meaning of "fair value" as that phrase is used in Code of Civil Procedure section 726, subdivision (b). The parties' positions are predictable. Defendants, the borrowers in this transaction, contend that "fair value" means the *fair market value* of the property, undiminished by any of the disabilities that attend a judicial foreclosure sale. This construction limits the amount of the deficiency which may be assessed against the borrower and encourages the lender to force up the bidding at the foreclosure sale. Rainer, however, as the lender contends, the "fair value" of the property must take into consideration the value actually purchased at the foreclosure sale. The most significant restriction on the marketability of such property, Rainer urges, is the right of the borrower to redeem the property within one year after the sale. (Code Civ. Proc., §§ 729.010, subd. (a), 729.030, subd. (b).) This right of redemption means the purchaser at a judicial foreclosure sale receives title that is only fee simple defeasible, which prevents an immediate resale of the property for its unencumbered fair market value. Accordingly, Rainer argues, to be made whole the lender must be given the opportunity to recover the property (by credit bid) and be awarded a deficiency judgment representing the difference between the immediate resale value of the property and the amount of the indebtedness.

The only California case in which the meaning of "fair value" was discussed is *Nelson* v. *Orosco* (1981) 117 Cal.App.3d 73 [172 Cal.Rptr. 457]. However, the discussion arose in a different factual context. In that case,

---

[2]The "fair value" of Golden Oaks was determined to be $310,500, and the "fair value" of Silverwood was found to be $220,500. As noted the amounts received at the respective foreclosure sales were $290,445.60 for Golden Oaks and $211,700 for Silverwood.

Orosco purchased residential property from Nelson and gave Nelson a promissory note secured by a second trust deed on a different piece of property (the Happy Valley Road property) also owned by Orosco. Orosco then contracted to sell the Happy Valley Road property to one Woodburn, who agreed to assume the first trust deed indebtedness on the Happy Valley Road property. No mention was made of Nelson's second trust deed. (*Id.,* at p. 76.) Orosco defaulted on the note, and Nelson moved to foreclose the second. Orosco defaulted in the action and judgment was entered against him for $67,116.35. (*Ibid.*) Following the judgment, but prior to the foreclosure sale, Woodburn sued both Nelson and Orosco for the failure of Orosco to disclose the second trust deed of Nelson and also recorded a notice of the pendency of this action. Woodburn sought specific performance of the agreement with Orosco, free and clear of Nelson's second trust deed. (*Id.,* at p. 77.) Thereafter, at the foreclosure sale, Nelson purchased the property for $1,000 above the existing first trust deed encumbrance of $100,000 and made application for a deficiency judgment. (*Ibid.*)

The expert testimony as to the "fair value" of the Happy Valley Road property varied from $120,000 to $180,000. In making these appraisals none of the experts considered the impact of the Woodburn action or its accompanying lis pendens. The trial court found the "fair value" of the property to be $180,000 and entered judgment that Nelson recover nothing from Orosco by way of a deficiency. (*Nelson* v. *Orosco, supra,* 117 Cal.App.3d at pp. 77-78.) In reversing, the First District concluded the "fair value" of the property required consideration of the pending lawsuit. The court noted that no willing purchaser in an open market would have paid the full $180,000 for the property in light of Washburn's claim. (*Id.,* at p. 79.) The court held, "[w]e are of the opinion that the legislative intent behind the enactment of Code of Civil Procedure section 726 was that its 'fair value' was to be determined by all of the circumstances attending the property at a foreclosure sale, including the state of its title and merchantability. Such statutes will be construed 'so as to make them workable and reasonable.'" (*Ibid.*)

Rainer seizes upon this language and argues that the right of redemption is a factor affecting the state of title and merchantability of property sold at a foreclosure sale. *Nelson* v. *Orosco,* however, concerned a factor affecting merchantability which was external. Woodburn's lis pendens was not a product of the foreclosure. The court in *Nelson* v. *Orosco* found this external factor must be considered in computing fair value, but did not hold that any circumstance *arising from* the foreclosure sale must necessarily be considered. *Nelson* v. *Orosco* simply holds that "fair value" must be determined in light of the property's marketability at the time of the sale. It does not equate "fair value" with "fair *foreclosure* value," as urged by Rainer.

The holding of *Nelson* v. *Orosco* has limited, if any, value in our factual setting. We therefore examine the language of the statute itself, in light of its legislative history, so that the purpose of the law may be effectuated. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859].) The fair value provision of Code of Civil Procedure section 726 is a product of the Great Depression. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 40 [27 Cal.Rptr. 873, 378 P.2d 97].) Prior to 1933, a mortgagee was required to exhaust his or her security before proceeding directly against the mortgagor. Once the security had been sold, however, either by private or judicial sale, the mortgagee could obtain a full deficiency judgment against the mortgagor for the difference between the indebtedness and the amount realized at the sale. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 600 [125 Cal.Rptr. 557, 542 P.2d 981].) During the Depression, with its devastating effect on property values, this procedure permitted the mortgagee to buy the property at the foreclosure sale for a nominal sum and realize a double recovery by holding the mortgagor for a large deficiency. (*Ibid.*; *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 40.)

The fair value limitations were enacted in 1933 to remedy this situation.[3] As originally enacted, however, Code of Civil Procedure section 726 provided that the deficiency judgment was limited to "the amount by which the entire amount of the indebtedness due at the time of sale exceeded the *fair market value* of the real property or interest therein sold . . . ." (Stats. 1933, ch. 793, § 1, p. 2119.) (Italics added.)[4] The problem with this formulation was that the Depression had severely reduced market values for real property. For many pieces of property there simply was no market at all. (See Washburn, *The Judicial and Legislative Response To Price Inadequacy In Mortgage Foreclosure Sales* (1980) 53 So.Cal.L.Rev. 843, 875-883; hereafter referred to as *Washburn.*) Accordingly, giving the mortgagor a credit against the deficiency judgment for the greater of the sale price or the fair market value was often an empty protection.

In 1937, the Legislature sought to address this problem. An amendment to Code of Civil Procedure section 726 was proposed which struck the "fair market value" language. In its place, it was proposed that the court appoint an appraiser in the event a deficiency judgment was sought. The appraiser

---

[3]The "fair value" limitations were applied to both judicial foreclosure sales (Code Civ. Proc., § 726) and private foreclosure sales. (Code Civ. Proc., § 580a.) (See Stats. 1933, ch. 642, § 4, p. 1672; Stats. 1933, ch. 793, § 1, p. 2118.)

[4]Of course, the original statute continued, as it does now, "[i]n no event shall the amount of [the] judgment, exclusive of interest from the date of sale and of costs exceed the difference between the amount for which the property was sold and the entire indebtedness secured by [the] mortgage [or deed of trust]." (Code Civ. Proc., § 726, subd. (b); Stats. 1933, ch. 793, § 1, p. 2119.)

was to file with the court an appraisal "stating the *intrinsic value* and also the market value if in the opinion of the appraiser there was a market for such property at the time and place of sale." (Italics added.) Thereafter, a hearing for objections to the appraisal and supporting evidence was to be held. At the conclusion of the hearing, it was proposed that the court entered a deficiency judgment "for not more than the amount by which the entire amount of the indebtedness due at the time of the sale . . . exceeded the *intrinsic value* of the real property or interest therein sold at the time of sale." Further, "[i]n determining intrinsic value, weight shall be given to evidence of market value only after it is established that there was a market at the time and place of sale for the kind of property sold." (Assem. Bill No. 1918 (1937 Reg. Sess.) § 1.) The bill was subsequently amended by the Assembly to delete the provisions regarding the court-appointed appraiser, and the "intrinsic value" language of the original bill was replaced with the present "fair value." (Assem. Amend. to Assem. Bill No. 1918 (1937 Reg. Sess.) Apr. 14, 1937.)

■ From these amendments, it is clear the Legislature's purpose in inserting the "fair value" language into Code of Civil Procedure section 726, subdivision (b) was to protect the defaulting mortgagor. (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 40.)[5] To do this, the Legislature found it necessary to credit the borrower with the intrinsic or underlying value of the property. The fair market value of the property was deemed an insufficient measure as circumstances might conspire to render valueless property which under normal conditions would have significant value. The Legislature therefore determined not to let the protection afforded a foreclosed mortgagor depend entirely on the vagaries of the marketplace. The mortgagor was to receive a credit for "the fair value of the property at the time of the sale (*irrespective of the amount actually realized at the sale*) . . . ." (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 601.) (Italics added.)
■ The "fair value" of foreclosed property is thus its intrinsic value. Under normal conditions this intrinsic value will often coincide with its fair market value; the value a willing purchaser will pay to a willing seller in an open market. (*Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 623 [184 P.2d

---

[5]In *Roseleaf Corp.* v. *Chierighino, supra,* the issue was whether Code of Civil Procedure section 580a, relating to private sales under the trust deed was applicable to a junior lienor (holder of second deed of trust) whose security was rendered valueless by a senior sale. The court held it was not and the junior lienor could recover as a judgment the full amount of the sums due on the note secured by a second deed of trust. The court gratuitously equated sections 580a and 726, Code of Civil Procedure, as each limiting a deficiency judgment to the difference between "the amount of the indebtedness and the *fair market value* of the property at the time of the sale." (59 Cal.2d at p. 39; italics added.) Section 580a, has the language in it of "fair market value." However, section 726 employs the language "fair value," the "market" having been deleted by the 1937 amendment. We do not perceive this improvident dicta to be precedential in determining if "fair value" is "fair market value," as the words "fair value" are presently used in section 726.

879].) This correlation is not fixed, however, and market value is only one factor the court should consider when determining "fair value." As discussed in *Nelson* v. *Orosco, supra,* 117 Cal.App.3d 73, "fair value" is to be determined by all of the circumstances affecting the intrinsic value of the property at the time of the sale. This necessarily excludes the circumstances of the foreclosure sale. These are not factors that affect the intrinsic worth of the property. Most notably, the right of redemption is limited to a year. After that time, it no longer serves to depress the marketability of the property. Accordingly, we conclude the Legislature intended that "fair value," as used in Code of Civil Procedure section 726, subdivision (b), be construed as the intrinsic value of real property subject to judicial foreclosure, taking into consideration all the circumstances affecting the underlying worth of the property at the time of the sale, without consideration of the impact of foreclosure proceedings on this value.

Rainer contends this formulation is unfair to the mortgagee because it precludes recovery of the entire debt. Assuming the mortgagee purchases at the foreclosure sale, it is urged, there is a loss on the difference between the statutorily defined "fair value" and the amount for which the property can be resold. Since the year's right of redemption makes resale for the intrinsic value unlikely, the deficiency judgment based on this figure will not make up the remainder of the debt. The trial court found this argument persuasive, for otherwise the risk of loss in a commercial enterprise would be on the party who does not have control over the enterprise: the lender. Moreover, opined the trial court, the borrower is adequately protected if "fair value" is construed to include the price-reducing effect of the right of redemption, because the borrower can sell the right of redemption or exercise it and sell the property for its unencumbered market value. The trial court therefore found the risk of loss should be on the party who undertook the enterprise: the borrower. We are not persuaded.

Initially we disagree that defining "fair value" in terms of the intrinsic worth of the property precludes full recovery of the debt. Concededly, the lender who bids in the property is temporarily deprived of the difference between the property's "fair value" and its market value as encumbered. However, this difference is negated in a year, when the right of redemption expires. On the other hand, if the lender gets the property *and* a deficiency judgment based on its depressed valuation because of foreclosure, the lender achieves a double recovery by the simple expedient of waiting one year before selling. This is the situation the statute in question was designed to prevent. (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 40.) ■ It was not the purpose of Code of Civil Procedure section 726 to insulate commercial lenders from the risk of loss where encumbered property declines in value. If the lender overvalues property for purposes of a loan, or

misjudges the commercial viability of a real estate project, it is entirely proper that the risk of loss be with that lender. The same risk is *always* present in purchase money mortgages for residential dwellings, where deficiency judgments are barred. (Code Civ. Proc., § 580b.) The lender's control over the situation, and its own protection, is at the time the loan is made and the risk of loss generated at that time cannot be shifted to the borrower by construction of a statute designed to *protect* the borrower.

Moreover, the protection offered the borrower by the trial court's construction of "fair value" is illusory. It assumes that the borrower who has defaulted on a loan will acquire the financial wherewithal to redeem the property within a year. The assumption is unjustified. We see no reason to assume a mortgagor who was unable to avoid foreclosure in the first place will suddenly be able to acquire sufficient financing to essentially buy the property back, albeit for a reduced (redemption) price. ■ The trial court erred when it found the right of redemption was a sufficient basis of protection to justify saddling the defaulting mortgagor with a larger deficiency judgment. The trial court's opinion that the risk of loss is more equitably borne by the borrower runs contrary to the purpose of the statute at issue. The Legislature intended the restriction on deficiency judgments to benefit the borrower, not the lender.

■ Moreover, it appears to this court that any "risk of loss" placed on Rainer is the product, at least in part, of Rainer's own actions. The mortgagee is not required to proceed by judicial foreclosure and thus procure property subject to a right of redemption. The mortgagee may foreclose the deed of trust by way of private sale and the resulting title is nonredeemable. In this event, however, the mortgagee must forego a deficiency judgment. (Code Civ. Proc., § 580d.) "By choosing instead to bar a deficiency judgment after private sale, the Legislature achieved its purpose [of parity between judicial and private foreclosure] without denying the creditor his election of remedies. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43-44.) Rainer elected to take a deficiency judgment with the knowledge that the property purchased at the foreclosure sale would be burdened by the right of redemption. In this equitable proceeding, Rainer cannot now justifiably complain that the redeemable title unreasonably depresses the value of the property it acquired when it had the option to select a foreclosure proceeding which would insure a title of fee simple absolute after foreclosure.

■ Rainer's final argument concerns those lots which were purchased by strangers at the foreclosure sale. In this circumstance, Rainer urges, its

loss is real and immediate. To illustrate, four units in Golden Oaks were purchased by a third party for approximately $34,000 each. If the defendant's appraisal of the intrinsic value ($48,500) is accepted as the "fair value," Rainer contends, there is an immediate unrecoverable loss of $14,500 on each unit. The response to this is that the loss, if any, is a matter at least partially within Rainer's control. In the example given, the size of the loss may simply be due to Rainer's failure to bid up the property to an appropriate level. In fact, it is a purpose of fair value statutes in general to encourage the mortgagee to bid up the property to its market value. (*Washburn, supra,* 53 So.Cal.L.Rev. at p. 911.) While such statutes may not precisely achieve this result in all cases, the level of inefficacy (depending as it does upon the efforts of the lender) is not sufficient to make the procedure an unreasonable method of achieving the Legislature's goal: protecting the borrower from an excessive deficiency judgment. It is the lender who makes a conscious decision as to the value of the property prior to making the loan. That this decision is faulty should not relieve the lender of the consequences of the decision by shifting the loss to the borrower. The Legislature has allocated the "risk of loss" in foreclosure proceedings and the trial court herein erred in attempting to shift this balance.

We note that the "fair value" provisions of Code of Civil Procedure section 726, subdivision (b) are not unique in the law. Numerous states have similar provisions. (See *Washburn, supra,* 53 So.Cal.L.Rev. at p. 908.) While the statutes vary as to the right and period of redemption, we have been unable to find a single case which construes the statutory phrase "fair market value" to take into consideration the price-depressing effects of the foreclosure proceedings. The cases generally view "fair value" or "fair market value" in the traditional sense of the intrinsic or potential worth of the property on the open market. (See, e.g. *First Nat. Bank of Cortland* v. *Intermont, Inc.* (1976) 53 App.Div.2d 760 [384 N.Y.S.2d 259, 260]; *Union Nat'l. Bank of Pittsburgh* v. *Crump* (1944) 349 Pa. 339 [37 A.2d 733, 735]; *Eastern Idaho Production* v. *Placerton, Inc.* (1980) 100 Idaho 863 [606 P.2d 967, 975]; *First Wis. Nat. Bank of Oshkosh* v. *KSW Invest.* (1976) 71 Wis.2d 359 [238 N.W.2d 123, 128]; *New Haven Sav. Bank* v. *West Haven Sound Dev.* (1983) 190 Conn. 60 [459 A.2d 999, 1004]; *Kennebec Sav. Bank* v. *Chandler* (Me. 1982) 447 A.2d 824, 826.) At least one commentator concurs. (*Washburn, supra,* 53 So.Cal.L.Rev. at p. 881.) Moreover, in the only judicial construction of "fair value" in this state, no mention was made of the right of redemption. (*Nelson* v. *Orosco, supra,* 117 Cal.App.3d at p. 79.) The reason for the exclusion is that the "fair value" statutes must be construed " 'so as to make them workable and reasonable.' " (*Ibid.*) Construing the phrase "fair value" in Code of Civil Procedure section 726, subdivision (b) as taking into consideration all the disabilities attending a foreclosure sale would be unreasonable, because it

would permit the lender the double recovery the statute was intended to prevent. ■■■ The trial court, faced with a novel and difficult question of statutory construction, erroneously interpreted Code of Civil Procedure section 726, subdivision (b) to the prejudice of the defendants.

Accordingly, the judgment is reversed and the matter remanded for further proceedings consistent with the views expressed herein.

Evans, Acting P. J., and Blease, J., concurred.