The FEDERAL LAND BANK OF ST. PAUL, a corporation, Plaintiff and Appellee,

v.

Harold J. BERGQUIST, a/k/a Harold John Bergquist, Defendant and Appellant.

Civ. No. 870245.

Supreme Court of North Dakota.

June 28, 1988.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Ltd., Grand Forks, for plaintiff and appellee; argued by Theodore M. Camrud.

Hodny, Burke, Rice & Stevenson, Grafton, for defendant and appellant; argued by Jake C. Hodny.

MESCHKE, Justice.

Harold J. Bergquist appealed from a deficiency judgment following foreclosure of a mortgage on his farmland. We reverse and remand for a new jury trial.

Bergquist defaulted on a note to the Federal Land Bank of St. Paul [the Bank] which was secured by a mortgage on his farmland in Walsh County. The Bank foreclosed its mortgage and the land was sold for $139,000 at a sheriff's sale.

The Bank then sued separately for a deficiency judgment, asserting that a balance of $138,160.55 remained due after the sheriff's sale. Pursuant to Section 32–19–06, N.D.C.C., a jury trial was held to determine the "fair value" of the land. The Bank's expert witness testified that the fair market value of the land was $139,000. Bergquist testified that in his opinion the land was worth $277,180.55. The jury's verdict set the fair value of the land at $210,000, and the trial court accordingly entered a deficiency judgment in the amount of $67,160.55 plus costs, disbursements, and interest. Bergquist appealed.

Bergquist asserted that the trial court erred in (1) failing to adequately instruct the jury on the concept of fair value; (2) allowing the Bank's expert witness to testify that fair value is synonymous with market value or fair market value; (3) limiting evidence on value; and (4) refusing to allow the parties to advise the jury of the effect of its determination of value.

This appeal raises novel questions about application of Section 32–19–06, N.D.C.C., whenever a deficiency judgment is sought following foreclosure:

"The court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted subsequent to July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if he has so indicated in his complaint, against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. Such separate action for a deficiency judgment must be brought within ninety days after the sale of the mortgaged premises. The court, in such separate action, may render a deficiency judgment against the party or parties personally liable, but such deficiency judgment shall not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises. In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value. In all actions brought for a deficiency judgment and before any judgment can be rendered therein, the determination of the fair value of the mort-

gaged premises shall first be submitted to a jury at a regular term or to a jury impaneled for that purpose, and no deficiency judgment can be rendered against the party or parties personally liable unless the fair value of the mortgaged premises is determined by such jury to be less than the sum adjudged to be due and the costs of the action."

The colorful and sometimes tumultuous history of the anti-deficiency laws, including Section 32–19–06, N.D.C.C., was recounted by Justice Vogel in *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857, 858–862 (N.D.1974). In response to the economic upheaval of the Great Depression, the Legislature in 1933 and 1937 enacted laws which wholly prohibited any form of deficiency judgment. In 1951 the Legislature amended the statutes to allow deficiency judgments under very limited circumstances:

"In 1951, the Legislature further amended the anti-deficiency judgment law, putting it in substantially its present form in Chapter 32–19, N.D.C.C. The amendments were made by Chapter 217, 1951 Session Laws. It is common knowledge that these amendments were made because the Federal Land Bank, one of the principal lenders in the State, was refusing to make loans unless deficiency judgments were permitted. The response of the Legislature was to allow deficiency judgments under very limited circumstances, and then only for such sum as was determined by a jury, in a separate action, to be the difference between the fair value (not necessarily the then market value or the price at which the property was sold at foreclosure sale) and the amount of debt due after the foreclosure sale. The present statutes are found at Sections 32–19–04, 32–19–06, and 32–19–07, N.D.C.C."

*First State Bank of Cooperstown v. Ihringer, supra,* 217 N.W.2d at 859–860. The 1951 amendment introduced the idea of "fair value" in deficiency judgment proceedings.

The legislative history of the 1951 amendment demonstrates a paramount intent to protect the debtor:

"One of the basic questions to be determined by the legislature in considering this broad question, is whether the legislature wishes to make long-term low-interest rate loans available to those of our citizens who desire to begin farming or continue farming in this state. In the event that this is decided upon as desirable, the Legislative Research Committee has worked out a means of assuring that the rights of the debtor will be fully safeguarded. It will be observed that while the proposed bill technically makes deficiency judgments possible, it surrounds the mortgagor with safeguards which in actual practice would make a deficiency judgment almost impossible except in a very deserving case.

\*   \*   \*   \*   \*   \*

"A review of the provisions of the present statutes of North Dakota relating to mortgage foreclosures and a review of the provisions of this House Bill No. 541, will indicate that while a deficiency judgment is technically possible, this bill places new and important safeguards around the mortgagor. While the individual safeguards referred to above are found in the statutes of other states the Legislative Research committee was unable to find any other state which went so far in protecting the debtor as to include all of the safeguards found in House Bill No. 541."

1951 Report of the North Dakota Legislative Research Committee, at 37–38, 39 [hereinafter 1951 Report].

Within this context, the Legislature ordained that a deficiency judgment could be obtained only for that part of the debt due over the fair value of the land. *See* Section 32–19–06, N.D.C.C. The Legislative Research Committee specifically noted that fair value was not limited to market value, but embraced a broader concept:

"The bill would assure that the fair value of the property would be credited against the indebtedness. It is to be noted that the determination of the fair value, not market value, would be made by jury in the county where the property is located. This fair value could take

many things into account and real estate values could be considered over a period of years."

1951 Report, *supra* at 39; *see also First State Bank of Cooperstown v. Ihringer*, *supra*, 217 N.W.2d at 859–860.[1]

■ This trial court did not define the term "fair value" for the jury. Rather, the court, in oblique language, instructed the jury that the "determination of value in any legal proceeding is seldom a matter of precise, mechanical rule," but "is rather a matter of opinion, sound judgment, expertise, and discretion based upon a consideration of the evidence and with due regard for the person that is testifying." Although this instruction was not erroneous so far as it went, it was incomplete. The trial court gave the jury no guidance on what to consider in determining fair value.

This omission was compounded by the trial court allowing the Bank's expert witness, a real estate appraiser, to testify over objection that there is no difference between "fair value," "fair market value," and "market value." Although qualified to give his opinion on the market value of the land, the witness was not a *legal* expert and should not have been allowed to give his opinion about the appropriate legal standard. In effect, the trial court allowed the Bank's expert witness to instruct the jury on the meaning of fair value under the statute. In addition, when viewed in light of the legislative history of Section 32–19–06, N.D.C.C., the expert's "instruction" to the jury was plainly wrong.

We are also troubled by the restrictions the trial court placed upon admission of evidence and by the failure to let the jury know about the effect of its determination. The trial court did not allow Bergquist to submit evidence to the jury about the amount of the mortgage to the Bank or about the amount of a second mortgage on the property. Nor did the court allow evidence about the amount due and owing on the note to the Bank. The court also refused to advise the jury, or allow the par-

ties to advise the jury, that the Bank could only receive a deficiency judgment if the fair value of the property was less than the amount remaining due on the debt, plus costs. It appears that all of these restrictions grew out of the trial court's cramped conception of fair value.

We understand the trial court's difficulty. Fair value is not easily defined. We are convinced, however, that the restrictive approach taken by the trial court was not in keeping with the Legislature's intent.

Legislative history of Section 32–19–06 shows that the Legislature meant something more comprehensive than current market value. *See* 1951 Report, *supra* at 39. The reason for rejecting market value can be gathered from a case construing a similar California statute, from which our statute is derived.[2] In *Rainer Mortgage v. Silverwood Limited*, 163 Cal.App.3d 359, 209 Cal.Rptr. 294, 297–298 (1985), the court, construing depression-era amendments to Cal.Civ.Proc.Code § 726, stated:

"From these amendments, it is clear the Legislature's purpose in inserting the 'fair value' language into Code of Civil Procedure section 726, subdivision (b) was to protect the defaulting mortgagor.... To do this, the Legislature found it necessary to credit the borrower with the intrinsic or underlying value of the property. The fair market value of the property was deemed an insufficient measure as circumstances might conspire to render valueless property which under normal conditions would have significant value. The Legislature therefore determined not to let the protection afforded a foreclosed mortgagor depend entirely on the vagaries of the marketplace."

*See also First Wisconsin National Bank of Oshkosh v. KSW Investments, Inc.*, 71 Wis.2d 359, 238 N.W.2d 123, 126–127 (1976). The *Rainer* court also noted that the legislative purpose of "fair value" statutes is to protect the borrower, and that the lender must therefore share the risk of loss if market values fall:

1. In summarizing the foreclosure process in *Hagan v. Havnvik*, 421 N.W.2d 56, 61 (N.D.1988), we did not mean to imply that "fair value" means the same thing as "fair market value."

2. Decisions from other jurisdictions construing statutes from which our law is derived are considered "highly persuasive." *See, e.g., Estate of Zins v. Zins*, 420 N.W.2d 729, 731 (N.D.1988).

"[T]he level of inefficacy (depending as it does upon the efforts of the lender) is not sufficient to make the procedure an unreasonable method of achieving the Legislature's goal: protecting the borrower from an excessive deficiency judgment. It is the lender who makes a conscious decision as to the value of the property prior to making the loan. That this decision is faulty should not relieve the lender of the consequences of the decision by shifting the loss to the borrower. The Legislature has allocated the 'risk of loss' in foreclosure proceedings and the trial court herein erred in attempting to shift this balance."

*Rainer Mortgage, supra,* 209 Cal.Rptr. at 300. The court concluded that market value is but one factor to be considered. Fair value is to be determined "by all of the circumstances affecting the intrinsic value of the property at the time of the sale." *Rainer Mortgage, supra,* 209 Cal.Rptr. at 298.

■ We agree with the California court that the legislative protection afforded a foreclosed mortgagor does not depend upon the vagaries of the marketplace. We believe that the Legislature intended "fair value" to have a broadly defined meaning, embracing many factors. We conclude that "fair value" means the value of the property which will produce a fair and equitable result between the parties.

■ The language of the statute and its legislative history show that the Legislature authorized the jury to balance the competing interests of the debtor and the mortgagee in reaching its determination of fair value. We also believe the Legislature intended that, rather than tightly restrict-

ing evidence on the issue of value, all evidence bearing on the value of the property and the circumstances of the underlying transaction can be presented to the jury. This would include, among other things, the amount of the mortgage, the amount of any subsequent mortgage, fluctuations in land values, and the remaining amount claimed to be due on the debt. Market value is, of course, admissible as one factor for consideration by the jury, but it is not controlling.

■ It is also appropriate to advise the jury of the effect of its determination. In other words, the jury should be allowed to hear about the amount owed on the mortgage, and should be instructed that the mortgagee will be entitled to a deficiency judgment only for the difference between that amount and the fair value of the property as determined by the jury.[3]

The Bank argued that this will allow juries to overly sympathize with debtors, resulting in deliberately erroneous determinations of fair value which would prevent a deficiency judgment. We point out, however, that the legislative history makes it clear that the intent of the statute is to afford every protection to the mortgagor and "in actual practice ... make a deficiency judgment almost impossible except in a very deserving case." 1951 Report, *supra* at 37–38. We believe the Legislature intended to let the jury decide, on the basis of the facts in each individual case, whether a deficiency judgment is appropriate.

The judgment is reversed. We remand for a new jury trial consistent with this opinion.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

3. We do not mean to suggest that juries in other types of cases must always be advised of the effect of their determination of specific fact issues. The use of a special verdict or a general verdict with interrogatories under Rule 49, N.D.R.Civ.P., which effectively isolates the specific factual determinations from their legal effect, is entirely appropriate in many cases. *See, e.g., Buehner v. Hoeven,* 228 N.W.2d 893, 900 (N.D. 1975); *Ferderer v. Northern Pacific Railway Co.,* 77 N.D. 169, 185–186, 42 N.W.2d 216, 225–226 (1950) (applying prior North Dakota statute derived, as our present rule, from Rule 49, F.R. Civ.P.). The determination of which verdict form to use is ordinarily within the discretion of the trial court. Rule 49, N.D.R.Civ.P.; *North American Pump Corp. v. Clay Equipment Corp.,* 199 N.W.2d 888, 898 (N.D.1972); *Haugen v. Mid–State Aviation, Inc.,* 144 N.W.2d 692, 698 (N.D.1966). Because we conclude, however, that the jury in a deficiency action is to balance the competing interests of the debtor and the mortgagee, we also conclude that it is important to inform the jury of the effect its determination will have upon the mortgagee's ability to obtain a deficiency judgment.

VANDE WALLE, Justice, concurring specially.

I agree with the thoughtful opinion written for the court by Justice Meschke. I write separately to emphasize one factor which may be encompassed within the term "fair value," and which is separate from "market value," and other economic values, i.e., the innate or intrinsic value of our irreplaceable natural resources, and, in North Dakota, most particularly the land. This State's dependence upon its agricultural industry, i.e., its land, is an accepted fact. I believe it may have been the innate or intrinsic value of land which the Legislature specifically had in mind when, as Justice Meschke has noted, it purposely prescribed "fair value" rather than "market value" as the standard to obtain a deficiency judgment. It is not by accident that the North Dakota Coat of Arms, prescribed by Section 54–41–01, N.D.C.C., contains the motto "Strength From the Soil"!