**Edward SCHIELE and Alice Schiele, Plaintiffs and Appellants,**

v.

**FIRST NATIONAL BANK OF LINTON, a North Dakota Corporation, Defendant and Appellee.**

**Civ. No. 880277.**

Supreme Court of North Dakota.

Feb. 20, 1989.

David A. Tschider, of Tschider & Smith, Bismarck, for plaintiffs and appellants.

Albert A. Wolf, of Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant and appellee.

VANDE WALLE, Justice.

Edward and Alice Schiele appeal from a district court judgment, based upon a jury verdict, establishing the fair value of their property in Linton. We reverse and remand for further proceedings.

During August 1979, the First National Bank of Linton loaned the Schieles $135,000 for which the Schieles executed a promissory note secured both by a real estate mortgage on their home in Linton and an assignment of their interest as mortgagees in a farm mortgage. The Schieles defaulted on the promissory note and First National foreclosed on the home mortgage. At the foreclosure sale First National bid $75,000 for the home. The Schieles, contending that the foreclosure on the home satisfied First National's debt, requested that the trial court order a return of their farm mortgage. The trial court granted a summary judgment to First National, holding that the foreclosure against the Schieles' home did not fully satisfy the debt and that First National was not precluded from enforcing the assignment of the farm mortgage to pay the balance of the debt. The Schieles appealed from that summary judgment.

In *Schiele v. First National Bank of Linton,* 404 N.W.2d 479 (N.D.1987), we held that First National was entitled to foreclose upon the farm mortgage collat-

eral to satisfy the remaining debt, but that the fair value of the Linton home must first be determined by a jury and subtracted from the amount owed to determine the remaining debt:

"[W]hile First National was free to foreclose upon the home mortgage without simultaneously foreclosing on the assignment of the farm mortgage, the fair value of the foreclosed home must be determined by a jury before First National may enforce the remaining debt against the farm mortgage.

\* \* \* \* \* \*

"We therefore reverse the summary judgment and remand to the district court for a determination, in accordance with the anti-deficiency statutes, of the difference between the fair value of the home and the amount of debt remaining due after its foreclosure sale." 404 N.W.2d at 485.

On remand the trial court, over the Schieles' objection, defined "fair value" in its instructions to the jury in a manner synonymous with the term "fair market value."[1] On appeal the Schieles assert that the trial court erred in giving the jury this restrictive definition of "fair value."

In *Federal Land Bank of St. Paul v. Bergquist,* 425 N.W.2d 360 (N.D.1988),[2] we held that the term "fair value," for purposes of determining enforceable remaining debt under the anti-deficiency statutes, is a broader concept than "fair market value:"

"We believe that the Legislature intended 'fair value' to have a broadly defined meaning, embracing many factors. We conclude that 'fair value' means the value of the property which will produce a fair and equitable result between the parties.

"The language of the statute and its legislative history show that the Legislature authorized the jury to balance the competing interests of the debtor and the mortgagee in reaching its determination of fair value. We also believe the Legislature intended that, rather than tightly restricting evidence on the issue of value, all evidence bearing on the value of the property and the circumstances of the underlying transaction can be presented to the jury. This would include, among other things, the amount of the mortgage, the amount of any subsequent mortgage, fluctuations in land values, and the remaining amount claimed to be due on the debt. Market value is, of course, admissible as one factor for consideration by the jury, but it is not controlling.

"It is also appropriate to advise the jury of the effect of its determination. In other words, the jury should be allowed to hear about the amount owed on the mortgage, and should be instructed that the mortgagee will be entitled to a deficiency judgment only for the difference between that amount and the fair value of the property as determined by the jury." 425 N.W.2d at 364.[3]

Although *Bergquist, supra,* involved a fair-value determination for farmland, while this case involves a personal residence, we conclude that the same broad definition of "fair value" necessarily applies. The anti-deficiency statutes do not distinguish between farmland and other types of property in requiring a "fair value" determination. Section 32–19–06, N.D.C.C.

We hold that the trial court erred in defining the term "fair value" as synonymous with "fair market value." Thus, we reverse the judgment and remand for a

---

1. The instruction was, with some additions, similar to instruction 1404 entitled "Just Compensation For Property Taken" from the instruction on eminent domain in N.D.J.I.—Civil, and reads, in part that "fair value:"

"... is the highest price for which the property can be sold in the open market by a willing seller to a willing purchaser, neither party acting under compulsion and both exercising reasonable judgment."

2. The trial in this case took place prior to our decision in *Bergquist, supra.* The Schieles made a "Rule 60 Motion to Vacate Judgment and Rule 59 Motion for A New Trial" subsequent to our decision in Bergquist. The motion was denied by the trial court.

3. The trial court did not limit the evidence introduced by the Schieles to prove the "fair value" of the property.

new determination of the "fair value" of the property. Upon remand the jury should be instructed on the meaning of "fair value" consistent with our interpretation of that term in *Bergquist, supra.*[4]

REVERSED AND REMANDED.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

LEVINE, Justice, concurring specially.

We have held that fair value is not synonymous with fair market value in determining value for purposes of a deficiency judgment. An instruction on the subject should center not only on that negative but also on those factors making up the "intrinsic" value of the real property in question. Such factors may include the property's family history, past use and other elements which provide the emotional component to the fair value definition, as well as the property's income-producing history, future income-producing capacity, the amount of past investment of labor and funds, along with the factors we referred to in *Bergquist.* The breadth of the instruction will necessarily depend upon the evidence submitted. It is not only the evidence that is to be wide-ranging, but also the instruction on the meaning of fair value.

---

**4.** In *Rainer Mortgage v. Silverwood Ltd.,* 163 Cal.App.3d 359, 209 Cal.Rptr. 294, 298 (1985), cited with approval in *Federal Land Bank of St. Paul v. Bergquist,* 425 N.W.2d 360 (N.D.1988), the California court observed that the California Legislature "intended that 'fair value' ... be construed as the intrinsic value of real property subject to judicial foreclosure, taking into consideration all the circumstances affecting the underlying worth of the property at the time of the sale, without consideration of the impact of foreclosure proceedings on this value." In the context of this case perhaps the most important element of an instruction defining "fair value" is that the value is not limited to market value.