560 So.2d 137 (1989)
FEDERAL LAND BANK OF JACKSON
v.
Joe T. WOLFE and Irene R. Wolfe.
No. 07-CA-58638.
Supreme Court of Mississippi.
December 6, 1989.
Rehearing Denied April 25, 1990.
Patricia A. Hancock, Jackson, William M. Chaffin, Holcomb Dunbar Connell Chaffin & Willard, Clarksdale, Lois La Seur, Holcomb Dunbar Connell Chaffin & Willard, Oxford, for appellant.
D. Ronald Musgrove, Smith & Musgrove, Batesville, for appellees.
Before HAWKINS, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice for the court:
Joe and Irene Wolfe borrowed $663,000.00 from the Federal Land Bank of Jackson, and in return executed a note and deed of trust on 781 acres of their land. After the Wolfes defaulted on the loan, Federal Land Bank foreclosed, and eventually purchased the subject property at the foreclosure sale. Federal Land Bank then filed suit against the Wolfes in Tallahatchie County Circuit Court, alleging that the proceeds from the sale of the subject property were insufficient to pay the Wolfes' debt and that the Bank was entitled to a deficiency judgment. A jury found in favor of the Wolfes. Because we find that reversible error was committed below, we reverse and remand.

I.
The parties in this cause stipulated to the following facts:
1) That on the 1st day of February, 1982, Joe T. Wolfe and wife, Irene R. Wolfe, executed a note to the Federal Land *138 Bank of New Orleans in the amount of $663,000.00.
2) That on the same date, Joe T. Wolfe and wife, Irene R. Wolfe, executed a good and valid deed of trust to secure the aforementioned note; this deed of trust pledged 781 acres of land as security.
3) At the time of the execution of the note and deed of trust this land was valued at approximately $1250.00 per acre.
4) That Joe T. Wolfe and wife, Irene R. Wolfe, paid a total of $138,932.19 on the note under the terms of the note.
5) That on March 18, 1985, Joe T. Wolfe and Irene R. Wolfe were declared to be in default on their note in the amount of $722,390.66, plus costs and attorney's fees.
6) That the note and deed of trust by which said note was secured were properly prepared and executed under the Constitution and laws of the State of Mississippi and according to generally accepted practices within said state.
7) It is further stipulated that the attorney who conducted the foreclosure sale, Hon. George P. Cossar, Jr., followed all constitutional and statutory requirements and conducted the sale in a manner generally held to be acceptable within the State of Mississippi.
8) Proper notice was given of said sale, said notice being published in The Sun-Sentinel, a newspaper published in Tallahatchie County in Vol. 62, Nos. 13, 14, 15, and 16, said numbers published on March 28th, April 4th, April 11th, and April 18th, 1985.
9) The Trustee's sale of the land took place between 11:00 o'clock in the forenoon and 4:00 o'clock in the afternoon on the 19th day of April 19, 1985, at the West front door of the County Courthouse in the City of Charleston, Mississippi.
10) The subject real property was bought by The Federal Land Bank of New Orleans for the sum of $663,000.00, or $848.91 per acre.
11) At the time of the foreclosure sale, the Bank was owed by Joe T. Wolfe and Irene R. Wolfe the sum of $733,784.88, including unpaid interest accrued and attorney's fees. This left a deficiency owed to the Federal Land Bank of New Orleans by Joe T. Wolfe and Irene R. Wolfe in the total amount of $70,784.88, plus reasonable attorney's fees required for collection.
On July 30, 1985, Federal Land Bank ("FLB") filed suit in Tallahatchie County Circuit Court, alleging that the Wolfes were indebted to FLB in the amount of $70,784.88 because of the failure of the sum resulting from the foreclosure sale to satisfy the amount owed by the Wolfes on their note. The Wolfes filed their answer on November 8, 1985, denying that they owed FLB anything, and alleging that if the foreclosure sale had been held in a commercially reasonable manner, the subject property would have brought a sum sufficient to pay off the indebtedness.
Trial was held on May 18-19, 1987. Ronnie Sellers, a loan officer for FLB, was FLB's only witness. When Sellers was asked what Joe and Irene Wolfe's 781 acres ("the subject property") was worth at the time of trial, counsel for the Wolfes objected, saying that this was irrelevant. The trial court held that testimony concerning land values would be restricted to the time period between March 15, 1985, the date of the appraisal of the subject property, and April 19, 1985, the date of the foreclosure sale of the subject property. Sellers testified that FLB formulated a bench mark or typical price for property in certain areas and adjusted the bench mark depending on how the property in question varied. As far as bidding, Sellers stated that at foreclosure FLB would bid the lesser of the appraised value or the debt, unless the appraised value was within 5% of the debt, in which case FLB would bid the debt. If the appraised value was not within 5% of the debt, then FLB would bid the appraised value.
On cross-examination, Sellers testified that he appraised 634 acres belonging to Roy Wolfe, which adjoined the subject *139 property. FLB foreclosed on this 634 acres on March 15, 1985, and as the sole bidder paid $626,738 for it. This came to $988.36 per acre. This was in contrast to the $848.91 paid for the subject property on April 19, 1985.
On re-direct Sellers testified that if it had been appraised on April 19, 1985, Roy Wolfe's property would probably have been worth "in the $750 range." Sellers further testified that the bench mark price had been adjusted downward on March 15, 1985, from $1220 per acre to $964 per acre, and this accounted for the discrepancy in the prices paid for the adjoining properties. According to Sellers, bench mark value was a direct reflection of market value. Counsel for FLB attempted to ask what happened to the market value of these two properties from January 25, 1985 to April 19, 1985, but the trial court apparently sustained the Wolfes' objection. Sellers finally testified that if the subject property had been foreclosed and sold in January, 1985, its worth would have been "in the $1,000 range." After Mr. Sellers finished, FLB rested.
Ronnie Sellers was then called by the Wolfes as an adverse witness. Sellers first described the structure of the FLB office. He identified Herb Haynes as the FLB Regional Supervisor. Haynes was the officer who had the authority to alter or change the bench mark value. Ed DeMoville was the president of the local association, hired by the Board of Directors and in charge of the local FLB office. The local Board of Directors approved foreclosures and controlled expenditures for the FLB office. When asked why FLB did not go out and re-appraise Roy Wolfe's property when it was apparent that property prices were falling, Sellers explained that he would have been unable to, as the bench mark price had not been adjusted. Sellers confirmed that FLB had not foreclosed on anyone in the First Judicial District of Tallahatchie County between November 12, 1983, and April 2, 1986, except for Roy and Joe Wolfe. On re-direct, FLB attempted to question Sellers as to how many times the bench mark had changed in the previous four years, but the trial court sustained the Wolfes' objection to this question. Sellers was able to testify as to foreclosures FLB had handled in Tallahatchie County but outside the First District.
Joe Wolfe was the last witness called. He testified that in February, 1985, the FLB granted him a 90-day extension to give him a chance to pay what he owed. Wolfe said that later relations turned sour between him and Ed DeMoville, as Wolfe was unable to put up any additional land as collateral for the loan. Wolfe also said that DeMoville threatened to file a judgment against him. When asked why he felt that he did not owe the FLB anything, Mr. Wolfe answered: "Well, considering the improvements that I've made on the land, and it is an ideal place now, the fact that I paid them $138,000, I believe you stated, on this debt and the fact that my land is a much better grade of land than some of the other that they have foreclosed, I just do not feel that I owe them any money... . And they also have the land on top of what I paid them." The jury found in favor of the Wolfes. On May 29, 1987, FLB moved for a J.N.O.V., but did not include a motion for a new trial. This motion was overruled on July 2, 1987. FLB has appealed, listing two assignments of error. Because we find the first dispositive, we do not consider the second.

II.

DID THE TRIAL COURT ERR IN EXCLUDING EVIDENCE OF THE VALUE OF THE SUBJECT PROPERTY AFTER THE FORECLOSURE SALE?
FLB argues that it should have been able to introduce evidence of falling land values and its inability, after the foreclosure sale, to sell the subject property for a sum approximating its true value. The trial court excluded this evidence as irrelevant.
The two points of excluded evidence which will be considered are the following: (1) FLB had been trying to sell the subject property from the time of the foreclosure to the time of the trial, but had been unable to do so for even an amount that equaled approximately one-half of the amount it *140 paid at the foreclosure sale; and (2) subsequent events had shown that the property was not worth the amount at which it had been appraised and the amount for which the FLB had purchased it at foreclosure.
Relevant evidence is defined by Miss.R.Evid. 401:
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
See also Mississippi State Highway Commission v. Dixie Contractors, Inc., 375 So.2d 1202 (Miss. 1979) (proffered evidence must appear calculated to alter the probabilities of some fact in consequence). Relevant evidence is admissible unless excluded by the Mississippi or United States Constitutions, or by the Rules of Evidence. Miss. R.Evid. 403. The admission or exclusion of evidence due to relevance is largely within the discretion of the trial judge. Independent Life & Acc. Ins. Co. v. Peavy, 528 So.2d 1112, 1119 (Miss. 1988).
Relevance must necessarily be viewed in light of previously announced guidelines concerning deficiency judgments. In Mississippi Valley Title Ins. Co. v. Horne Construction Co., 372 So.2d 1270 (Miss. 1979), this Court adopted the following rule:
The mortgagee's right to a deficiency decree usually depends on the facts and circumstances of each case, and, since the mortgaged premises constitute the primary fund for the payment of the mortgage debt, it is only where the mortgagee has endeavored to collect it out of the land that a just judgment for deficiency can be entered. While it has been held that the power to render a deficiency decree is governed by the rules which would apply at law, it has also been held that the court has jurisdiction after a foreclosure sale to determine any intervening fact which would make it inequitable to enter a deficiency decree. Accordingly, no right to a deficiency judgment vests until plaintiff satisfies equity that it would be equitable, in the light of the sale price, to authorize a deficiency judgment.
372 So.2d at 1272 (quoting 59 C.J.S. Mortgages § 778 (1949)).
Mississippi Valley Title was relied upon in Lake Hillsdale Estates, Inc. v. Galloway, 473 So.2d 461 (Miss. 1985). In Lake Hillsdale, the mortgagee, Louisiana Savings Association, obtained a deficiency judgment against the mortgagor, Lake Hillsdale. This Court reversed and remanded the lower court's directed verdict in favor of the mortgagee. In doing so it relied first on its decision in Mississippi Valley Title. The Court then went on to add:
Our decision in Mississippi Valley Title makes it clear that something more than a difference between the price paid at the foreclosure and the amount of the indebtedness must be demonstrated before the mortgagee is entitled to a deficiency judgment.
In the case sub judice, as in Mississippi Valley Title, the mortgagee was the sole bidder at the foreclosure sale and thereby established a sale price which left the mortgagee entitled to a substantial deficiency judgment. Though we have concluded above that the price paid at the foreclosure sale was not so inadequate as to require setting aside the sale, we cannot conclude that the value of the property thereby obtained is insufficient to satisfy the indebtedness of the mortgagor. In any case, no proof to that effect has been offered by the appellee.
We hold, consistent with our decision in Mississippi Valley Title Insurance that in order to obtain a deficiency judgment, the mortgagee has the burden of proving its entitlement under principles of equity to a deficiency judgment. The trial court's granting of a deficiency judgment upon motion for directed verdict was therefore premature. We reverse the court's ruling and remand for a new hearing to first determine if the mortgagee has endeavored to collect the indebtedness out of the land. Then, it must be determined whether the value of *141 the property satisfies the debt of the mortgagor or creates a surplus.
473 So.2d at 466. Several guidelines emerge from these cases. In the case at bar, FLB must show more than the fact that there was a difference in the price it paid at foreclosure for the subject property, $663,000, and the amount of the indebtedness owed by the Wolfes at that time, $733,784.88. The fact that FLB was the sole bidder who established the sale price paid for the subject property is a factor to be considered.
In OMP v. Security Pacific Business Finance, Inc., 716 F. Supp. 251 (N.D. Miss. 1989), the court, while acknowledging that Mississippi courts had not expressly stated their equitable power to award a deficiency judgment based on the fair market value instead of the bid price at the foreclosure, recognized that this Court had clearly given broad equitable protection to mortgagors. If we are to extend protection to mortgagors, it follows that we have to allow FLB (the mortgagee) the opportunity to prove values at the time of foreclosure and to prove their effort to recover out of the disposition of properties foreclosed. If we are to protect mortgagors from unscrupulous mortgagees at foreclosure, it follows that the mortgagee must have wide latitude to prove his effort to diminish mortgagee's loss and thereby protect the mortgagor. Indeed, FLB has the burden of proving under the principles of equity that it had endeavored to collect the Wolfes' indebtedness out of the land and that the value of the subject property is insufficient for this purpose. In Lake Hillsdale, the mortgagee put on no proof to this effect. In the case at bar, FLB's attempt to put on what it considers relevant proof is the crux of the controversy.
If as this Court held in Mississippi Valley Title and Lake Hillsdale a mortgagee seeking a deficiency must demonstrate something more than the difference between the price paid at foreclosure and the amount of indebtedness owing at the time of foreclosure, then certainly FLB must be allowed to introduce evidence that would demonstrate that it is entitled to a deficiency judgment and evidence that would portray the efforts made to recover by FLB, including evidence of unsuccessful attempted sale of the foreclosed property, decline of land values immediately before or after the foreclosure sale, and any additional effort that it may have made to reduce the deficiency of the debtor.
There appears to be no specific rule as to whether subsequent sales of property and subsequent shifts in market value are admissible in a case such as this. In Federal Land Bank of St. Paul v. Bergquist, 425 N.W.2d 360 (N.D. 1988), the North Dakota Supreme Court, in considering its statute authorizing deficiency judgments, stated the following:
[A]ll evidence bearing on the value of the property and the circumstances of the underlying transaction can be presented to the jury. This would include, among other things, the amount of the mortgage, the amount of any subsequent mortgage, fluctuations in land values, and the remaining amount claimed to be due on the debt. Market value is, of course, admissible as one factor for consideration by the jury, but it is not controlling.
425 N.W.2d at 364. A similar position was taken in Wachovia Realty Investments v. Housing, Inc., 292 N.C. 93, 232 S.E.2d 667 (N.C. 1977).
If the language and import of Lake Hillsdale, supra, are to be carried out, it necessarily follows that subsequent valuations and actions by the creditor/purchaser at the foreclosure sale are relevant. It is, however, not just the valuation that is relevant. The totality of the actions taken by the creditor/purchaser at the foreclosure sale to satisfy the full debt from the property foreclosed become relevant to the entitlement of FLB to a deficiency judgment.
Certainly FLB should have the opportunity to clearly demonstrate through its offer of evidence that it is entitled to a deficiency judgment and that it has been prudent in its attempt to satisfy the debt in full through the sale of the property. The defendants objected to this evidence going before the jury. The trial court sustained *142 the objections, and FLB was prevented from offering proof of its entitlement to a deficiency judgment.
For the reasons stated above, the judgment of the trial court is reversed and this matter is remanded for a new trial.
REVERSED AND REMANDED FOR NEW TRIAL NOT INCONSISTENT WITH THE OPINION OF THIS COURT.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, and BLASS, JJ., concur.