[No. F027162. Fifth Dist. June 8, 1998.]

LUTHER BURBANK SAVINGS AND LOAN ASSOCIATION, Plaintiff and Respondent, v.
COMMUNITY CONSTRUCTION, INC., et al., Defendants and Appellants.

## COUNSEL

Klein, Wegis, DeNatale & Goldner and Thomas V. DeNatale, Jr., for Defendants and Appellants.

Hanson, Bridgett, Marcus, Vlahos & Rudy, Robert L. Rusky and Richard N. Rapoport for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, J.**—This is an appeal from a deficiency judgment entered after a lender judicially foreclosed on real property. ■ In a judicial foreclosure action involving a transaction where a deficiency is not waived or legally prohibited, if the property is sold for less than the amount of the subject secured indebtedness, the creditor may seek a deficiency judgment based on the difference between the amount of the indebtedness and the "fair value" of the property at the time of sale or the actual foreclosure sale price, whichever is greater. The court determines "fair value." (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 43-44 [27 Cal.Rptr. 873, 378 P.2d 97].) By paying the foreclosure sale price in a timely fashion, the debtor exercises a statutory right of redemption, an opportunity to regain ownership of the property from whoever purchased it at the foreclosure sale.

In the present case, the debtors/borrowers appeal, contending the amount of the deficiency judgment awarded runs afoul of the "fair value"

requirements of Code of Civil Procedure section 726,[1] subdivision (b), by accounting for an unpaid tax encumbrance on the property at the time of the foreclosure. We find the trial court properly accounted for the unpaid tax lien in calculating the amount of the deficiency and affirm the judgment.

## FACTS

On May 9, 1986, Shadow Ridge Limited, predecessor in interest of appellants, Community Construction, Inc., and James R. Trigueiro (collectively borrowers) purchased unimproved land in Kern County. In order to complete the purchase, Shadow Ridge borrowed $575,000 from First Federal Savings and Loan Association of Bakersfield, predecessor in interest of respondent, Luther Burbank Savings and Loan Association (lender), securing the loan with a deed of trust on the land. Borrowers defaulted. By the time of the default, borrowers still owed lender $547,300.75 on the loan principal. They also owed Kern County unpaid real property taxes of $152,505.70.

Lender filed a judicial foreclosure action on March 14, 1994. On April 6, 1995, lender and borrowers entered into a "Stipulation For Entry of Judgment of Foreclosure and Order of Sale." The parties agreed to judgment in the sum of $692,765.64.[2] In addition, the trial court's judgment specified that lender would be entitled to a deficiency judgment against borrowers once the foreclosure sale was completed and the deficiency amount could be calculated. Judgment was entered on April 25, 1995.

---

[1]The statute reads in pertinent part: "(b) . . . In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for the debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which hearing either party may present evidence as to the fair value of the real property or estate for years therein sold as of the date of sale, the court shall render a money judgment against the defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the real property or estate for years therein sold as of the date of sale. In no event shall the amount of the judgment, exclusive of interest from the date of sale and of costs exceed the difference between the amount for which the real property or estate for years therein was sold and the entire amount of the indebtedness secured by the mortgage or deed of trust."

[2]The judgment consisted of the following sums:

| | |
|---|---|
| Outstanding principal loan balance: | $547,300.75 |
| Delinquent loan interest | 67,500.48 |
| Interest on the delinquent interest | 4,046.27 |
| Late charges | 2,953.09 |
| Attorney fees and costs of foreclosure sale proceedings | 70,965.05 |
| | $692,765.64 |

The sale was held on March 14, 1996. Lender purchased the property for a credit bid of $10,000. Lender's calculations leading to a purchase price of $10,000 were as follows:

| | |
|---|---|
| Appraised value of property if unencumbered—$10,000 per acre times approximately 21 acres | $210,000.00 |
| Less: | |
| unpaid tax encumbrance | (152,505.70) |
| estimated penalties for unpaid taxes | (21,910.68) |
| estimated cost of correcting miscellaneous defects on property | (25,583.62) |
| Approximate net value/sales price | $ 10,000.00 |

On April 4, 1996, lender filed a motion pursuant to Code of Civil Procedure section 726, subdivision (b), seeking a deficiency judgment against borrowers in the amount of $682,765.64. This sum represented the difference between the lender's claimed "fair" property value of $10,000 and the earlier stipulated judgment amount of $692,765.64.

Borrowers challenged the motion, offering their own evidence to prove that the property's fair value was neither $210,000 nor $10,000, but instead $634,000, a sum derived without considering the existing tax lien.[3] Consequently, argued borrower, the deficiency judgment should be limited to $58,765.64 ($692,765.64 minus $634,000). On May 14, 1996, the trial court ruled that the property's fair value at the time of the foreclosure sale was $22,000 per acre (a value greater than lender's $10,000 figure, yet less than the $30,000 per acre amount claimed by borrowers), for a total value of $465,300 ($22,000 per acre times 21.15 acres). On June 27, 1996, a deficiency judgment was entered granting lender a deficiency judgment in the principal amount of $379,971.34. In its minute order, the court characterized the amount of the judgment as including the following sums:

| | |
|---|---|
| Original amount of judgment: | $692,765.64 |
| Minus court's determination of fair value of the property | (465,300.00) |
| Plus amount of tax encumbrance on property on date of foreclosure sale | 152,505.70 |
| Total principal amount of deficiency judgment | $379,971.34[4] |

---

[3]We note that the parties tended to round off the acreage and dollar figures. The acreage was more precisely 21.15 rather than the 21-acre, figure used by lender in its valuation above. Additionally, the borrowers asserted a value of $30,000 per acre, which renders a total amount of $634,500 instead of the $634,000 borrowers asserted was the fair value of the property.

On August 2, 1996, borrowers elected to exercise their right to redeem the property for the $10,000 lender had paid at the foreclosure sale.[5] During the time that lender owned the property, the unpaid back taxes had been lender's responsibility. After borrowers redeemed the property, the back taxes were again borrowers' responsibility, just as they had been before the property was lost to foreclosure. By letter brief dated August 5, 1996, borrowers objected to the court's taking the amount of taxes into account in calculating the principal amount of the deficiency judgment and asked the court to eliminate from that judgment the tax lien amount of $152,505.70. After reviewing the letter briefs from both parties, the court declined to adjust the amount it had awarded lender. On August 27, 1996, the deficiency judgment was entered in the amount of $379,971.34.

## DISCUSSION

Borrowers contend the amount of the judgment is in error because the court "added" to the judgment the amount of the unpaid property taxes. Borrowers perceive this as forcing them to pay the taxes twice—once to the taxing agency and then again to the lender to whom they owe the deficiency judgment. In support of their position that the judgment must be reduced by the amount of taxes still owing, borrowers direct the court's attention to California case law discussing the concept of "fair value" under Code of Civil Procedure section 726[6] and to the policies underlying the statutory scheme concerning foreclosures and deficiency judgments.

In fact, the forfeiture statutes are but tangentially relevant to this appeal; as lender correctly points out, the language of the judge's order sets up not so much a legal problem as an accounting problem. As we will discuss, the *amount* of the judgment was accurate. Unfortunately, the *language* used in the order, indicating that the dollar amount of the taxes was being added to the judgment, suggests that the judgment in favor of lender includes payment *to it* of taxes owed to the taxing agency. However, analysis of the court's calculations shows that its handling of the tax lien actually led to a "fair value" of the property that comports with the sparse case law interpreting the concept of fair value under section 726.

Section 726 calls upon the trial court to impose on a borrower a money judgment in favor of the lender for the amount by which the borrower's indebtedness (with interest and costs) exceeds the judicially adjudicated fair value. The statute itself fails to define fair value. Courts

---

[4]The judgment also awarded additional litigation costs and postjudgment interest. Since those items are not in dispute, they are not specifically enumerated in this opinion.

[5]Lender additionally paid accrued interest of $386.34.

[6]All statutory references are to the Code of Civil Procedure unless otherwise stated.

interpreting the statute have defined it as a value that takes into account "all of the circumstances attending the property at a foreclosure sale, including the *state of its title* and merchantability." (*Nelson* v. *Orosco* (1981) 117 Cal.App.3d 73, 79 [172 Cal.Rptr. 457], italics added.) However, the circumstances which the court must consider have to be *external* to the foreclosure process. Thus, in reaching a fair value, the court must *not* take into account the dampening effect on sales price of the property's being foreclosed upon, because this is not a factor external to the foreclosure process. (*Rainer Mortgage* v. *Silverwood, Ltd.* (1985) 163 Cal.App.3d 359, 363 [209 Cal.Rptr. 294].) So, a court's assessment of fair value begins with its analysis of one or more appraisals showing the likely sales price which a given piece of land would command in the open market if the land were entirely unencumbered and its title unclouded. The court then considers those external factors that reduce the amount that a willing purchaser in an open market would pay to a lender for the property. (*Id.* at p. 364.)

 Here, the court's procedure for arriving at fair value comported with the requirements set forth in the statute and in the case law. It accepted and considered each side's appraisals suggesting fair market values for the property if it were unencumbered. Borrowers' expert offered an unencumbered market value of $634,000; lender's appraiser offered an unencumbered value of $210,000. The court ruled that a fair unencumbered value was $465,300.

Arriving at a reasonable unencumbered value was merely the court's first step. To arrive at a statutory "fair value" for purposes of reducing the deficiency judgment, the court next had to consider the amount by which any encumbrances or clouds on title might reasonably affect the property's actual sales price.

To better understand this evaluation, we must examine the contextual function of this second step. It is to allow the lender to seek a judgment in excess of the present value of the security; the value of the security to a lender is the equity in the property external of the fact of foreclosure and the subject indebtedness. If, for example, the property is clouded by some other encumbrance unpaid by a borrower at time of foreclosure, that amount is properly excluded from the equitable fair value of the property. The lender gets nothing in return for that portion of the property's value attributable to this encumbrance and passes that debt onto the foreclosure sale purchaser.

Thus under the present circumstance of foreclosure sale of property encumbered by a Kern County real property tax lien, whoever purchases the

property, whether it be a third party, lender, or borrowers by way of redemption, will be obligated to pay the lien amount to the county tax collector in order to free the property's title of that particular encumbrance.

Lender urged the court to deduct from the unencumbered value all three of the items that lender had deducted from the unencumbered appraised value before making its foreclosure sale bid, namely (1) the unpaid tax lien of $152,505.70, (2) estimated costs of clearing miscellaneous clouds on title; and (3) estimated penalties incurred on account of unpaid taxes, accruing at the rate of $1,217.26 per month. The court reduced the property's fair value by the amount of the tax lien, but refused to reduce its valuation of the property in amounts attributable to possible effects of any other clouds on title and/or tax penalties assessed in excess of the amount included in the tax lien.[7]

In *Nelson* v. *Orosco, supra,* 117 Cal.App.3d at page 79, the court ruled that the trial court erred when it neglected to factor into its assessment of the property's fair value a lis pendens reflecting that the property was the subject of litigation, because "[m]anifestly, no willing purchaser in an open market would have paid the full $180,000 for the property under the circumstances. . . ."

Similarly, here, no willing purchaser would have paid lender the full price (as determined by the court) of $465,300 for the property and additionally take the property subject to the $152,505.70 tax lien. Rather, a full-market-value purchaser would have been willing to pay no more than the price of $465,300, *reduced by* the tax lien to which the property was still subject and for which the purchaser would now be responsible. Thus, in the case at bar, the hypothetical willing, full-price purchaser would have paid $465,300, reduced by the tax lien of $152,505.70 for a total purchase price of $312,794.30. This $312,794.30, then, would be the "fair value" which should have been used, and which *was* used, to reduce the deficiency judgment due to lender.[8]

Borrowers contend the court's order somehow makes them responsible for paying the property taxes twice. While this is not the case, a cursory reading

---

[7]We need not discuss the court's decision to exclude these items because lender has not appealed challenging these items.

[8]That this amount was used to reduce the deficiency judgment can be seen from the following:

The *original* judgment amounted to $692,765.64.

The principal amount of the deficiency judgment, entered after the court held a hearing and determined the fair value was $379,971.34. The *difference* between $692,765.64 and $379,971.34 is $312,794.30—*the precise fair value amount calculated by the court.* Thus, the court's calculations properly accounted for the tax lien.

of the court's order may suggest this mistaken contention. The order reads: "The Court having granted Plaintiff's motion for Deficiency Judgment on May 14, 1996 and the parties having been unable to agree upon the language of the judgment, the Court directs that judgment shall be entered in the sum of $379,971.34, plus costs of suit and attorneys fees, based on the Court's previous finding that the fair value of the property was $22,000.00/acre × 21.15 acres [which amounts to $465,300]. The judgment includes the sum of $692,795.00 [apparently this number actually should have been $692,765.34] . . . *plus taxes of $152,505.70 as of the date of sale*." (Italics added.)

Thus, the unfortunate language of the court's order charges against the deficiency judgment the *entire amount* of the unencumbered value of the property and then *adds back in* the $152,505.72 by which that unencumbered value would have, in fact, *reduced* the actual sales price payable by the hypothetical willing purchaser. This same result is reached correctly by simply charging against borrowers' deficiency judgment not the entire unencumbered market value of the property but only the "fair" value that a willing purchaser would in fact pay—in this case, the market value minus the amount of the tax lien.

In substance, the court correctly performed the two-step evaluation process. It is only in the language of its order that the accounting for the tax lien amount is in a confusing form, yet ultimately rendering the correct result. The substance of the court's actions was to find the "fair value" of the property was the adjudicated unencumbered value of $465,300 *minus* the tax lien of $152,505.70. Even if it can be said that the reasoning of the court reflected in the language of its order is incorrect, we do not normally review the artfulness of the court's language or reasoning, but rather the correctness of its result. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325 [48 P. 117], and 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 340, pp. 382-383.) Here, the result was correct because, no matter how the order was phrased, the tax lien would not properly have been chargeable against the deficiency judgment.

Finally, borrowers claim the result here is inequitable because it encourages a lender to underbid at foreclosure sale, and it is inconsistent with legislative history of protecting the borrower. This is simply not the case. The only reason borrowers now must pay the tax lien to the taxing authority is that *they chose to redeem the property.* By repurchasing the property, borrowers once again assumed the responsibility for paying unpaid property taxes, past, present and future. If borrowers had not wanted to be responsible for actually paying the taxes, they could have chosen not to redeem. Here, it

was borrowers, not lender, who benefited from the lender's low bid at the foreclosure sale. It was that bid of $10,000 that borrowers needed only match in order to exercise their right of redemption. From all of the evidence, this is a bargain price for borrowers to pay even when borrowers take subject to the tax lien against the property.[9] Thus, borrowers are not being treated "inequitably" since their decision to once more assume the actual obligation to pay the tax lien was entirely within their control.

On the other side, lender sustained a considerable loss as a result of the low bid. While lender is effectively being charged $312,794.30 as the full net value of the property, it is only receiving back from borrowers the $10,000 redemption payment, plus a small amount of interest.

Borrowers' obligation to pay the tax lien flows from the fact that they now own the property—apparently a valuable asset. But their present ownership of the property is irrelevant to the amount of the deficiency. If they had not redeemed the property, the redemption itself being a separate transaction, whoever bought it would own the property and be responsible for the tax lien; borrowers would not owe the taxes, they would still have on hand the $10,000 they paid for the property, and they would own no land. But even if borrowers did not own the property, they *would still owe lender the exact same amount they currently owe*—$379,971.34—the original deficiency judgment *reduced by* the actual, encumbered, fair value of the property on the date of the foreclosure sale.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to lender (respondent herein).

Ardaiz, P. J., and Harris, J., concurred.

---

[9]Borrowers presented evidence the full value of the property was $634,000. Even assuming the property was worth the judicially determined $465,300, by exercising their right of redemption, borrowers have conceivably enriched themselves by approximately $300,000 as follows:

| | |
|---|---|
| Market value | $465,300.00 |
| Price borrower paid | (10,000.00) |
| Tax lien borrower must still pay | (152,505.70) |
| Borrower's net gain | $302,794.30 |