Filed 2/4/15  Wakefield v. Carone CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DAVID W. WAKEFIELD et al., | |
| Plaintiffs and Appellants, | E059342 |
| v. | (Super.Ct.No. MCC1300727) |
| JAMES V. CARONE as Trustee etc., et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed.

Tyler & Bursch, Robert H. Tyler and James A. Long, for Plaintiffs and Appellants.

Keefe Roberts & Associates, Keefe E. Roberts and Jenna M. Warden, for Defendants and Respondents.

Plaintiffs and appellants David W. Wakefield, Elise M. Wakefield, and The D&E Five, Inc., Retirement Trust (D&E Five Trust) sought and were granted by the trial court first a temporary restraining order (TRO) and then a preliminary injunction to stop the foreclosure sale of the Wakefields' property.  The order granting the preliminary

1

injunction also required plaintiffs to post an $868,000 bond by a date set by the trial court. Plaintiffs did not post a bond by that date, and defendants and respondents James V. Carone and Gwendolyn G. Carone, Trustees of the Carone Family Trust Dated January 20, 2005, proceeded with the trustee sale. After the trustee sale, plaintiffs sought ex parte relief, requesting, among other things, that the trial court declare the trustee sale void, reinstate the preliminary injunction, and reduce the amount of bond required. The trial court denied plaintiffs' ex parte application.

On appeal, plaintiffs raise four claims of error, the first of which relates to the bond required in connection with the grant of a preliminary injunction, while the others relate to the denial of plaintiffs' ex parte application after the preliminary injunction terminated and the property was sold. First, plaintiffs contend the trial court abused its discretion by setting an excessive bond. Second, plaintiffs argue that the trustee sale was improper because, even though the preliminary injunction terminated when plaintiffs failed to post the required bond, the TRO remained in effect. Third, plaintiffs assert that defendants violated the TRO by issuing the notice of trustee sale. Finally, plaintiffs argue that defendants violated the requirements of Civil Code section 2924g, subdivision (d), because the trustee sale took place less than seven days after the date the preliminary injunction terminated for failure to post the bond.

For the reasons discussed below, we reject each of defendants' claims of error, and affirm the trial court's orders.

2

## I. FACTS AND PROCEDURAL BACKGROUND

The Wakefields are husband and wife, and owners of a property located in Murrieta, California. In 2010, to fund building a house on the property, the Wakefields took out two construction loans. The first construction loan, in the amount of $2,200,000, was from the D&E Five Trust, of which the Wakefields are the beneficiaries. The second construction loan, in the amount of $375,000, was from defendants. Both construction loans were secured by promissory notes and deeds of trust with the power to sell. And both the construction loans were subordinate to a first loan, in the amount of $670,000, which the Wakefields took out in purchasing the property (purchase loan).

In 2011, an additional $355,000 was added to the principal of the construction loan from defendants, for the purpose of completing construction, as well as paying property taxes and insurance. In exchange, the promissory note securing the loan from defendants, now with a total principal balance of $730,000, was made superior to the promissory note securing the D&E Five Trust loan. The loan from defendants was *not* made superior to the purchase loan.

On May 8, 2013, defendants recorded a notice of trustee sale with respect to the property, stating an amount due of $868,398.73, and setting the sale for May 29, 2013.

On May 23, 2013, plaintiffs filed their complaint against defendants, asserting causes of action for breach of contract, wrongful foreclosure, and fraud. On May 24, 2013, plaintiffs filed an ex parte application, seeking a TRO to stop the trustee sale. The trial court held a hearing on the ex parte application on May 28, 2013, and concluded that

3

"the matter needs to be heard on the merits." It issued a TRO to maintain the status quo pending a hearing on the matter of a preliminary injunction.

Despite the TRO, the trustee sale set for May 29, 2013, proceeded; according to defendants, this occurred because of a miscommunication between defendants and the foreclosure trustee.[1] This sale was subsequently rescinded, and the trustee's deed upon sale was not recorded.

The court heard arguments regarding issuance of a preliminary injunction, and the amount of bond to be required, on June 7, 2013. On June 10, 2013, the court issued a minute order granting plaintiffs' request for preliminary injunction, contingent upon plaintiffs posting bond in the amount of $868,000, and plaintiffs continuing to make monthly interest payments. In its formal order, dated June 20, 2013, the court specified that the bond be posted by July 12, 2013.

On June 25, 2013, defendants recorded a new notice of trustee sale, setting the trustee sale for July 17, 2013. After plaintiffs failed to post the required bond by July 12, 2013, the trustee sale proceeded on July 17, 2013, as noticed.

On July 18, 2013, plaintiffs filed an application for ex parte relief requesting, among other things, that the trial court declare the July 17, 2013, trustee sale void,

---

[1] We note that in their July 18, 2013, ex parte application, plaintiffs asserted this sale never occurred. But to the extent this remains a dispute between the parties, it is not one we need to resolve.

reinstate the preliminary injunction, and reduce the amount of the required bond. After a

hearing on July 19, 2013, the trial court denied plaintiffs' ex parte application.[2]

## II. DISCUSSION

**A. The Trial Court Did Not Abuse Its Discretion in Setting the Bond.**

Plaintiffs contend that the trial court abused its discretion in setting the amount of

the bond at $868,000, roughly equal to the amount defendants claimed as the payoff

amount of the loan. We find no abuse of discretion.[3]

When granting an injunction, with some exceptions not relevant here, the trial

court "must require an undertaking on the part of the applicant . . . ." (Code Civ. Proc.,

§ 529, subd. (a).) "[T]he trial court's function is to estimate the harmful effect which the

injunction is likely to have on the restrained party, and to set the undertaking at that

sum." (*ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 14 (*ABBA Rubber Co.*)

[Fourth Dist., Div. Two].) We review the trial court's setting of the amount of an

injunction bond for abuse of discretion. (*Ibid.*)

Plaintiffs' argument that the trial court set an excessive bond rests primarily on an

appraisal of the property, presented to the trial court at the June 7, 2013, hearing, valuing

the property at $2.9 million in its then-current condition. Plaintiffs point to the

circumstance that the payoff amount of the loan from defendants, plus the amount of the

---

[2] Additional facts will be discussed below as necessary to address plaintiffs' claims of error.

[3] Because we find no abuse of discretion, we need not and do not discuss defendants' argument that plaintiffs' waived any objection to the amount of the bond.

purchase loan, totals substantially less than $2.9 million, and argue on that basis that defendants were "adequately secured," so there was "little to no harm likely to be incurred" by defendants resulting from the injunction. From plaintiffs' perspective, even if the holder of the purchase loan were to foreclose on the property, there would be more than enough cash available from the proceeds to also pay off the debt to defendants, so only a de minimis bond in support of the injunction would be appropriate.

Nevertheless, plaintiffs' premise that a foreclosure sale would necessarily yield anything close to the appraised value of the property is at least questionable. (See, e.g., *Luther Burbank Savings & Loan Assn. v. Community Construction, Inc.* (1998) 64 Cal.App.4th 652, 656 [property found to have fair market value of $465,300, encumbered by $152,505 tax lien, sold at foreclosure sale for $10,000].) Also, property values are variable, and the opinions of appraisers may differ. Indeed, just a few weeks after presenting the trial court with an appraisal value of $2.9 million, plaintiffs represented to the trial court that an appraisal report valuing the property at $3.4 million would soon be available, thanks to a rising market. But the property's estimated value could just as easily have declined as quickly as it purportedly appreciated. And, contrary to plaintiff's suggestion in their briefing on appeal, there is at least some evidence that plaintiffs were in arrears with respect to the purchase loan: *Defendants* had made substantial payments on the purchase loan to bring the holder of the purchase loan current.

Plaintiffs further assert that the trial court failed to balance the respective interests of the parties. There is nothing in the record, however, that provides any support for this argument. The court did weigh the equities differently than plaintiffs would prefer, as

6

demonstrated by the bond that it set, but that does not show the court did not perform the required balancing. Additionally, plaintiffs had represented to the court on a number of occasions, including in their complaint and at the hearing on the preliminary injunction, that they were prepared to pay their debt to defendants in full, as soon as they received an accounting of exactly how much was owed. The trial court had good reason to believe, therefore, that posting a bond in the amount set was within the plaintiffs' means.[4] It was not unreasonable for the trial court to have weighed the defendants' concern about possible loss of their security interest in the property against the burden posting an $868,000 bond would impose on plaintiffs, and to have reached the conclusions that it did, given the information it had before it.

In short: Plaintiffs persuade us that there were reasonable arguments in favor of setting a lower bond amount; however, they have not persuaded us that the amount set by the trial court was arbitrary or capricious, or beyond the bounds of reason. (See *ABBA Rubber Co.*, *supra*, 235 Cal.App.3d at p. 14.) Particularly given the existence of another substantial indebtedness secured by the property, with priority over defendants' security interest, the trial court did not abuse its discretion by setting the bond at the full amount defendants contended they were owed.

---

[4] Indeed, in their ex parte application on July 19, 2013, plaintiffs again represented that they *could* post a bond in the full amount of $868,000, but that they had not been able to gather the funds in time. Nevertheless, nothing in our record suggests that plaintiffs ever objected to, or sought an extension of, the date set by the trial court for posting of the bond until after that date had already passed.

**B. The Trustee Sale on July 19, 2013, Did Not Violate the TRO, Which Had Terminated Automatically When the Preliminary Injunction Issued.**

Plaintiffs acknowledge that when they failed to post the required bond by the date set by the trial court, the preliminary injunction automatically terminated. They contend, however, that the TRO that preceded the preliminary injunction nevertheless remained in effect, and enjoined defendants from conducting the July 19, 2013, trustee sale. Plaintiffs are incorrect.

"A TRO is purely transitory in nature and terminates automatically when a preliminary injunction is issued or denied." (*Landmark Holding Group, Inc. v. Superior Court* (1987) 193 Cal.App.3d 525, 529 (*Landmark*).) No additional order by the trial court is necessary to dissolve the TRO. (See *Knight v. Cohen* (1907) 5 Cal. App. 296, 301 (*Knight*) ["An order dissolving or discharging a restraining order . . . is not necessary, and it falls with a denial of the motion for a preliminary injunction, or becomes merged in the latter if granted."].)

Here, therefore, the TRO terminated automatically and had no further independent significance after June 20, 2013, when the trial court signed and filed the formal order issuing the injunction and setting the bond, and the TRO was thereby dissolved or merged into the preliminary injunction. The preliminary injunction terminated on July 12, 2013, when plaintiffs failed to post the required bond. And the July 19, 2013, trustee sale violated neither the TRO nor the preliminary injunction, because on that date neither the TRO nor the preliminary injunction remained in effect.

8

Plaintiffs' argument to the contrary rests on their interpretation of the California Rules of Court, rule 3.1150 (rule 3.1150). They focus on the following language in rule 3.1150: "If the proposed order and the undertaking required are not presented within the time allowed, the TRO may be vacated without notice." (Rule 3.1150(f).) Plaintiffs read the word "may" to suggest that the trial court "is permitted, but not required, to vacate the TRO without notice," and to imply that, absent an order explicitly vacating the TRO, the TRO remains in effect even if the preliminary injunction is terminated.

Plaintiff's reading of rule 3.1150, however, is devoid of any case law support, and is inconsistent with the case law discussed above. On its face, rule 3.1150 addresses the continued force of a TRO during the period *before* the trial court signs a formal order issuing the injunction and setting the bond. (See rule 3.1150(f) ["Unless otherwise ordered, any restraining order previously granted remains in effect during the time allowed for presentation for signature of the order of injunction and undertaking."].) Under the authority quoted above, once the order of injunction and undertaking is signed, the TRO is dissolved or merged into the preliminary injunction without any further order of the court. (*Landmark*, *supra*, 193 Cal.App.3d at p. 529; *Knight*, *supra*, 5 Cal. App. at p. 301.) We conclude plaintiffs' interpretation of the law is incorrect, and the trial court properly rejected it.

## C. Defendants Were Never Enjoined From Issuing a Notice of Trustee Sale.

As noted, on June 25, 2013, defendants recorded a new notice of trustee sale, setting a trustee sale for July 17, 2013. Plaintiffs contend that this action was in violation

9

of the injunction issued by the trial court, which at that time remained in effect, because plaintiffs' time to submit the required bond had not yet run out.[5] We disagree.[6]

The trial court enjoined defendants from proceeding with a trustee sale of the property. The ex parte order for the TRO—proposed by plaintiffs for the court's signature and later incorporated by reference into the court's order issuing a preliminary injunction—essentially states this same point in three slightly different ways. In the first numbered paragraph, the order states that the "trustee sale" (capitalization omitted) of the property, identified by address and date of the sale, is "hereby stayed." In the second numbered paragraph, the order specifies that defendants are the individuals "restrained from foreclosing" on the property, which is identified again by address. In the third numbered paragraph, the order states the "foreclosure sale," identified by address of the property and trustee sale number, is "hereby stayed."

Nowhere, however, does the trial court's order specifically forbid defendants from taking any particular steps *in preparation for* a trustee sale, including issuance of a notice

---

[5] Plaintiffs argue specifically that the notice of trustee sale violated the TRO. For the reasons discussed in the previous section, it was the preliminary injunction, not the TRO, that was in effect on June 25, 2013. The distinction, however, has no effect on the substance of our analysis: The court's formal order issuing the preliminary injunction merely incorporates by reference the terms of the TRO.

[6] We note defendants' argument that this issue was not presented to the trial court, and therefore forfeited. Indeed, the issue is not clearly separated out and articulated as a separate argument in plaintiffs' ex parte application, which focuses on the purported wrongfulness of the July 17, 2013, trustee sale. Nevertheless, we find it more expedient to address the issue, which is rather straightforward, on its merits, rather than engaging in a more involved waiver analysis, which would either lead to the same result (affirmance, if we found the issue forfeited), or require analysis of the merits in any case (if we were to find no forfeiture).

of trustee sale, as plaintiffs would have it. Plaintiffs insist that the use of the term "foreclosing" in the second numbered paragraph "must be interpreted" more broadly, to cover any continuance or commencement of foreclosure proceedings. But they present no compelling reason why the trial court was required to accept this interpretation of the word. Indeed, in plaintiffs' own briefing before the trial court, they repeatedly use the term "foreclosure" to refer specifically to the trustee sale, and not more broadly to the entire foreclosure process. And we note that the same judge who issued the TRO also was the judge who heard and denied defendants' ex parte application, which supports the conclusion the trial court did not fail to interpret its own order correctly, but rather never shared plaintiffs' broad view of the intended scope of the injunction.

At most, plaintiffs have pointed out a potential ambiguity in the language of the injunction. On appeal, ambiguities must be resolved in favor of affirmance of the lower court's ruling. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286) ["The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance."].) We therefore conclude that plaintiffs have failed to demonstrate any error.

## D. The Trustee Sale on July 17, 2013, Did Not Violate Civil Code Section 2924g.

Plaintiffs contend that the trustee sale conducted on July 17, 2013—five days after the preliminary injunction terminated because of plaintiffs' failure to post the required bond—violated Civil Code section 2924g, subdivision (d). Not so.

11

Section 2924g provides that a trustee sale "shall commence at the time and location specified in the notice of sale." (§ 2924g, subd. (a).)  It also provides that "[t]here may be a postponement or postponements of the sale proceedings . . . ." (*Id.*, subd. (c)(1).)  Further, section 2924g specifies that, in the case of a postponement required by a court order, the trustee sale "shall be conducted no sooner than on the seventh day after the earlier of (1) dismissal of the action or (2) expiration or termination of the injunction, restraining order, or stay that required postponement of the sale . . . ." (*Id.*, subd. (d).)  The purpose of this seven-day waiting period is to "'provide sufficient time for a trustor to find out when a foreclosure sale is going to occur following the expiration of a court order which required the sale's postponement' and 'provide the trustor with the opportunity to attend the sale and to ensure that his or her interests are protected.'" (*Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 505 [quoting legislative history].)

In this case, there was no postponement of the sale from the noticed date and time, and therefore no mystery to be solved regarding when the foreclosure sale was going to occur.  To be sure, there had been a previous notice of trustee sale for the same property, setting a sale for an earlier date.  That previously scheduled sale, on May 29, 2013, did not result in a transfer of ownership, so there was in some sense a postponement of the sale of the property.  But it was not a postponement as the term is used in section 2924g.  A more accurate characterization is as follows:  The May 29, 2013, sale was conducted, but later rescinded; a new and separate sale, pursuant to a new and separate notice of sale, was set for July 17, 2013, and conducted on that date, without any postponement, because

12

the injunction that might have required postponement, had it remained in effect, instead terminated when plaintiffs failed to post the required bond. [7]

In short, plaintiffs fail to demonstrate that the trustee sale conducted on July 17, 2013, was conducted in violation of section 2924g, and fail to demonstrate any error on the part of the trial court in denying their ex parte application.

### III. DISPOSITION

The orders appealed from are affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

J.

We concur:


RAMIREZ

P.J.


MILLER

J.

---

[7] On appeal, plaintiffs have raised no contention that the notice of trustee sale itself was improper or invalid, except for the argument we reject above that its issuance violated the trial court's injunction.  In their ex parte application, plaintiffs raised additional arguments regarding the June 25, 2013, notice of trustee sale.  But these arguments have not been repeated in their briefing on appeal.